MEMORANDUM OPINION AND ORDER
 

 TASHIMA, District Judge.
 

 This is an action for malicious prosecution based on defendants’ conduct as counsel for plaintiff in
 
 Avnet, Inc. v. Scope Industries,
 
 499 F.Supp. 1121 (S.D.N.Y. 1980) (the “underlying action”). In the underlying action, Avnet sued to secure additional public disclosures under the Securities Exchange Act of 1934 (the “Exchange Act”), alleging violations of sections 13(d), 15 U.S.C. § 78m(d) (requiring certain public disclosures), 14(a), 15 U.S.C. § 78n(a) (regulating proxy solicitation) and 10(b), 15 U.S.C. § 78j(b) (proscribing manipulative conduct in securities transactions). The district court granted Scope’s motion to dismiss in part, and denied Avnet’s motion for a preliminary injunction. In so ruling, the district court held that additional disclosures by Scope in its second amendment to its Schedule 13D, which was filed after the underlying action was commenced, mooted substantial portions of Avnet’s § 13(d) claim.
 
 Id.
 
 The Second Circuit affirmed, noting that the issue of Scope’s status as an unregistered investment company, see 15 U.S.C. § 80a-l
 
 el seq.,
 
 remained in controversy. (Unpublished memo. No. 80-4048, Apr. 24, 1981.) Thereafter, the parties in the underlying action stipulated to its dismissal with prejudice, each party bearing its own costs.
 

 This action was commenced in state court and was removed here by defendants. Removal is predicated on their claim that original federal jurisdiction exists under 28 U.S.C. §§ 1331 and 1337. Plaintiffs, contending otherwise, have moved to remand the action to state court. 28 U.S.C. § 1447(c).
 

 The issue presented for decision is whether or not a malicious prosecution action based on an underlying action which alleged violations of the Exchange Act “arises under” the laws of the United States.
 
 [1]
 
 For the reasons explained below, I hold that it does not.
 

 
 *371
 
 20. Issuance of a preliminary injunction cannot be viewed as imposing a severe hardship on the citizens of Illinois.
 
 [13]
 
 Once a state has voluntarily elected to participate in the Medicaid program, as Illinois has, it must comply with all federal Medicaid standards.
 
 Alabama Nursing Home Ass’n,
 
 617 F.2d at 396. Accordingly no state may characterize its duty to comply with the requirements of an elective program such as Medicaid as constituting a hardship to its citizens.
 

 
 *374
 
 A suit is properly removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally.
 
 Snow v. Ford Motor Co.,
 
 561 F.2d 787, 789 (9th Cir.1977). A claim based on state law
 
 *375
 
 may confer federal jurisdiction if such claim “arises under” federal law.
 
 Smith v. Kansas City Title & Trust Co.,
 
 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). The Supreme Court has held that a claim based on state law falls within the original jurisdiction of the lower federal courts only in those cases “in which a well-pleaded complaint establishes ... that the plaintiff’s right to relief
 
 necessarily
 
 depends on resolution of a
 
 substantial
 
 question of federal law.”
 
 Franchise Tax Bd.,
 
 103 S.Ct. at 2856 (emphasis added). Federal question jurisdiction exists over a well-pleaded state law claim only if “it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.”
 
 Gully v. First National Bank,
 
 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).
 

 The Ninth Circuit has consistently held that a state claim “arises under” federal law only “if the complaint, properly pleaded, presents a substantial dispute over the effect of federal law, and the result turns on the federal question.”
 
 Guinasso v. Pacific First Fed. Sav. & Loan Ass’n,
 
 656 F.2d 1364, 1365-66 (9th Cir.1981),
 
 cert. denied,
 
 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982).
 
 See also, Spokane County Legal Serv., Inc. v. Legal Serv. Corp.,
 
 614 F.2d 662, 667 (9th Cir.1980);
 
 Standage Ventures, Inc. v. Arizona,
 
 499 F.2d 248, 249 (9th Cir.1974).
 

 Under the “arising under” standards of the Supreme Court and the Ninth Circuit, whether this action was properly removed depends on whether determination of plaintiffs’ state-created claim of malicious prosecution necessarily requires resolution of a substantial question of federal law. This, in turn, requires careful examination of the elements of malicious prosecution in California.
 

 In order to establish a cause of action for malicious prosecution of a civil proceeding under California law, a plaintiff must plead and prove: (i) that a prior proceeding was terminated in plaintiff’s favor; (ii) that the proceeding was brought without probable cause; and (iii) that it was initiated with malice.
 
 [2]
 

 Bertero v. National General Corp.,
 
 13 Cal.3d 43, 50, 118 Cal. Rptr. 184, 529 P.2d 608 (1974). The decisive element here is probable cause.
 
 [3]
 

 In California, the test for probable cause in a civil proceeding has both subjective and objective components. In part, the existence of probable cause is determined by the traditional objective test: a suspicion founded on circumstances warranting a reasonable person’s belief that the charge is true. However, liability may also turn on actual knowledge or subjective belief.
 
 [4]
 

 
 *376
 
 If the initiator knows that his claim is groundless he cannot have an actual or honest belief in its validity, and he may not escape liability for commencing an action based on such a claim merely because a reasonable man might have believed it was meritorious.
 

 Id.
 
 at 55, 118 Cal.Rptr. 184, 529 P.2d 608.
 

 Likewise, a claim against counsel for malicious prosecution of a civil action requires examination of both the objective reasonableness of the claim and the subjective belief of those attorneys responsible for its prosecution:
 

 An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious research of legal authority, he has an honest belief that his client’s claim is tenable in the forum in which it is to be tried. [Citations omitted.] The test is twofold. The attorney must entertain a subjective belief that the claim merits litigation and that belief must satisfy an objective standard.
 

 Tool Research & Eng’g Corp. v. Henigson,
 
 46 Cal.App.3d 675, 683, 120 Cal.Rptr. 291 (1975).
 

 Plaintiffs here allege lack of probable cause in that none of defendants “had an actual and honest belief that there were grounds for any of the claims made in the underlying action, ____” (1st Amend. Comp., K 7.) Instead, plaintiffs allege, “defendants commenced and maintained the underlying action maliciously and for the purpose of harassing each of the plaintiffs to . i. prevent or dissuade Scope, the largest single shareholder of ... Avnet, Inc. from exercising its rights as such shareholder.”
 
 (Id.)
 
 Plaintiffs, thus, allege that defendants did not “entertain a subjective belief” in the merits of the claim which they brought, but rather brought the claim for purposes other than reaching the merits of the litigation.
 

 Under the
 
 Tool Research
 
 two-step analysis, in assessing whether or not defendants brought the underlying action without probable cause, the first question is whether defendants did or did not have the required subjective belief in the merits of their claim. If it is determined that defendants did have such a subjective belief, the decision to bring the underlying action then would be evaluated under the objective standard — whether a reasonable person would have believed that there was probable cause to bring the underlying action. Under the two-step approach, a determination that defendants lacked a subjective belief in the merits of the underlying action would end the inquiry. In other words, the issue of probable cause does not necessarily “turn” on the objective merits of the underlying action, because the absence of subjective belief in the merits of the claim would be dispositive.
 
 [5]
 

 See Bertero,
 
 13 Cal.3d 43, 118 Cal.Rptr. 184, 529 P.2d 608.
 

 Defendants contend that plaintiffs’ allegation that they brought the underlying action without probable cause implicitly says without probable cause to believe that there existed “valid claims for relief under the federal securities laws.” ' (Opp., p. 13.) Proof of this allegation, defendants assert, necessarily requires interpreting federal law; therefore, plaintiffs’ state-law claim “arises under” the laws of the United States.
 

 
 *377
 
 Defendants rely primarily on
 
 Sweeney v. Abramovitz,
 
 449 F.Supp. 213 (D.Conn. 1978), to support their position.
 
 [6]
 
 In
 
 Sweeney,
 
 a police officer sued a citizen in state court for malicious prosecution based on dismissal of the citizen’s federal claim against him under 42 U.S.C. § 1983. Judge Newman considered as an issue of first impression “the jurisdiction of a federal court to hear a claim for malicious prosecution in a civil suit, where the prior suit had been brought pursuant to a federal statute.”
 
 Id.
 
 at 213. The court noted that plaintiff’s complaint avoided any mention of federal law, and that, therefore, under strict interpretation of the “well-pleaded complaint” test of
 
 Smith v. Kansas City Title
 
 and its progeny, there was no federal jurisdiction. However, Judge Newman found an “implicit federal ingredient” in the complaint. He reasoned that when plaintiff alleged that defendant brought suit without probable cause, he was “implicitly saying without probable cause to believe there existed a valid cause of action under 42 U.S.C. § 1983.”
 
 Id.
 
 at 215. Under the Connecticut standards for malicious prosecution and probable cause, “[ojnly if [defendant] did not have probable cause to believe that the facts known to him established a cause of action under § 1983 does [plaintiff] have a valid claim now.”
 
 Id.
 
 at 216. The court, therefore, held that the action arose under the laws of the United States.
 

 The Second Circuit’s “arising under” standard was described by Judge Newman as depending on
 

 whether a properly pleaded state-created claim itself presents a pivotal question of federal law, for example
 
 because an act of Congress must be construed
 
 or federal common law governs some disputed aspect of the claim.
 

 Id.
 
 at 214, quoting
 
 McFaddin Express, Inc. v. Adley Corp.,
 
 346 F.2d 424, 426 (2d Cir. 1965),
 
 cert. denied,
 
 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966) (emphasis added). Applying this test to the Connecticut probable cause standard, Judge Newman concluded that “the meaning of § 1983 is ... a pivotal question of federal law, the resolution of which will be essential to determining whether [plaintiff] will have established a
 
 prima facie
 
 case.”
 
 Id.
 
 449 F.Supp. at 216.
 

 Judge Newman then advanced an additional reason to assert jurisdiction, based on an “umbrella” or protective theory of federal jurisdiction:
 

 The potential for using state malicious prosecution suits to deter legitimate § 1983 actions implicates important federal concerns ....
 

 If the question of what constitutes probable cause to bring a § 1983 action is determined according to state law, there is a possibility that the standard will be set so high in some state courts as to permit malicious prosecution suits to be brought in response to legitimate § 1983 actions ... [Determining the standards for a malicious prosecution action requires the delicate balancing of the legitimate interests of public officials to be free from unfounded § 1983 suits against the necessity of preserving plaintiffs’ ability to vindicate their federal rights undeterred by fear of being subjected to unfounded malicious prosecution suits. Such a balancing may itself be a federal question sufficient to invoke § 1331 jurisdiction.
 

 Predicating federal jurisdiction on this type of “arising under” analysis may not be appropriate every time a successful defendant, sued under a federal statute, claims malicious prosecution by his erstwhile plaintiff. But it is entirely appropriate to recognize such jurisdiction here to make sure that a federal forum is available to guard against the possibility that a malicious prosecution action might be used to deter the use of § 1983 and
 
 *378
 
 thereby undermine the important rights that statute was enacted to protect.
 

 Id.
 

 Defendants’ reliance on
 
 Sweeney
 
 is misplaced. Judge Newman’s decision rests both on Second Circuit interpretation of “arising under” jurisdiction and on his interpretation of the elements of malicious prosecution under Connecticut law. While it appears that, in the Second Circuit, a claim involving the “construction of federal law” may be considered a “pivotal question” justifying the assertion of federal jurisdiction, the Ninth Circuit has more closely followed the literal wording of Supreme Court precedent to require that a
 
 substantial
 
 question involving resolution of federal law be
 
 necessarily
 
 implicated by plaintiff’s complaint in order to find federal jurisdiction over the state-created claim.
 
 Guinasso,
 
 656 F.2d 1364.
 

 Under Connecticut law, as set forth in
 
 Sweeney,
 
 probable cause is shown if a reasonable person would have believed in the merits of the claim based on the facts available to him or her. Under California law, however, as explained above, probable cause is analyzed under a two-step approach which requires subjective belief in the merits of litigation after a reasonable investigation.
 

 Under the California standard discussed above, a federal question is not necessarily implicated in the subjective belief test, which could be dispositive of the probable cause issue. This test and the allegations thereunder implicate counsel’s knowledge of securities law, the extent and product of counsel’s investigation, and counsel’s intent. None of these inquiries requires resolution of a substantial question of federal securities law. As a result, it cannot be said that inquiry into defendants’ subjective belief in the merits of the underlying action will require “resolution of a substantial question of federal law.”
 
 Franchise Tax Bd.,
 
 103 S.Ct. at 2856.
 

 In
 
 City of Fresno,
 
 560 F.Supp. 31, Judge Price reached a similar conclusion.
 
 City of Fresno,
 
 like
 
 Sweeney,
 
 involved a malicious prosecution complaint where the underlying action was brought under § 1983. As in the instant case, the defendant was counsel for plaintiffs in the underlying action. Judge Price found the action to be “factually indistinguishable from
 
 Sweeney,” id.
 
 at 33, but disagreed with Judge Newman’s analysis. He reasoned that under California law, a determination of probable cause in the underlying action is dependent on evaluating the subjective belief of counsel in the merits of that action. This, in turn, requires evaluating only whether counsel had enough evidence to form a belief that the claim merited litigation: “Clearly, the California element of probable cause is going to be determined by the evidence, both contradicted and uncontradicted, which the defendants had available to them at various stages of the proceedings, particularly at the time the original complaint was filed.”
 
 Id.
 
 at 34. Finding that such a determination does not raise a federal question, the action was dismissed for lack of subject matter jurisdiction.
 
 Id.
 
 at 35.
 

 Likewise, plaintiffs here need only show that defendants had no evidence of Exchange Act violations at the time the underlying action was commenced to prove lack of probable cause. Other considerations in the subjective belief analysis (experience of counsel, quality of investigation and motive) also comprise questions of fact. To the extent that this factual inquiry touches on a knowledge of federal securities laws,
 
 e.g.,
 
 whether or not certain evidence indicates a probable violation of the Exchange Act, such inquiry does not require “resolution of a substantial question of federal law” and, therefore, does not confer federal jurisdiction.
 

 Even assuming,
 
 arguendo,
 
 that application of the objective test will be necessary, the California state courts are fully capable of interpreting federal law insofar as resolution of the objective probable cause test may implicate federal issues. The question of whether or not a colorable claim existed under the Exchange Act at the commencement of the underlying action is different in kind than the question of whether or not
 
 *379
 
 Scope violated the Exchange Act, as alleged in the underlying action. California courts are competent to determine all that is necessary to apply the reasonable person probable cause standard as developed under California common law. To the extent that a state court would be called upon to interpret the Exchange Act and the decisions of federal courts interpreting that Act, I cannot say that such interpretation would raise a “substantial question” of federal law. Indeed, I cannot say that such interpretation would involve “resolution” of a federal question at all.
 

 Finally, defendants rely on the policy argument in
 
 Sweeney
 
 that state court adjudication of malicious prosecution actions, where the underlying action was based on federal law, might lead to the impingement of the very rights the federal law was created to protect. Unless a federal forum is available to guard against the improper use of malicious prosecution actions, they assert, potential plaintiffs may be deterred from suing under the Exchange Act and important rights that that Act was designed to protect may be undermined. Moreover, defendants note, unlike the § 1983 actions involved in
 
 Sweeney
 
 and
 
 City of Fresno,
 
 federal courts have exclusive jurisdiction over claims under the Exchange Act. 15 U.S.C. § 78aa;
 
 Clark v. Watchie,
 
 513 F.2d 994, 997 (9th Cir.),
 
 cert. denied,
 
 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). Therefore, defendants imply, California courts are less able to determine probable cause in the instant case, and federal jurisdiction should lie to protect the federal rights involved.
 

 This “umbrella” argument cannot transform a state claim into a federal question. Our federal system often entrusts to state courts the responsibility of deciding issues of federal law. The corollary of the well-pleaded complaint doctrine is that state courts have jurisdiction to decide affirmative defenses based on federal law.
 
 [7]
 
 Thus, it is clear that state courts are competent to adjudicate the merits of a defense based on the Exchange Act, even though, as defendants note, the federal courts have exclusive jurisdiction over claims brought pursuant to that Act.
 
 Weiner v. Shearson, Hammill & Co.,
 
 521 F.2d 817, 822 (9th Cir.1975);
 
 Shareholders Management Co. v. Gregory,
 
 449 F.2d 326, 327 (9th Cir.1971) (per curiam). The state courts are just as competent to apply state law standards of probable cause to the requirements of the Exchange Act as they are to adjudicate the merits of a federal defense based on that Act.
 

 To hold that every malicious prosecution action based on an underlying federal claim confers “arising under” jurisdiction to ensure protection of federal rights, would be to imply a federal jurisdictional “umbrella” where Congress has not created one. With respect, I reject the argument advanced in Sweeney.
 
 [8]
 

 See City of Fresno,
 
 560 F.Supp. at 34.
 

 For the reasons stated, I conclude that this malicious prosecution action does not arise under federal law. Therefore, this action was removed improvidently and without jurisdiction. 28 U.S.C. § 1447(c).
 

 ORDER
 

 IT IS ORDERED that this action is remanded to the Superior Court of the State of California for the County of Los Angeles.
 

 [13]
 

 . By definition a large segment of Illinois residents — the Medicaid beneficiaries — will be benefited by this order. That fact, though of course important, is not wholly controlling for current purposes.
 

 [1]
 

 . The “arising under" standards of 28 U.S.C. § 1331 and § 1337 are the same.
 
 Franchise Tax Bd. v. Construction Laborers Vacation Trust,
 
 — U.S.-, 103 S.Ct. 2841, 2845 n. 7, 77 L.Ed.2d 420 (1983).
 

 [2]
 

 . While malice is a separate element of the tort, the courts "uniformly permit malice ... to be inferred from a want of probable cause.”
 
 Weaver v. Superior Court,
 
 95 Cal.App.3d 166, 188, 156 Cal.Rptr. 745 (1979).
 

 [4]
 

 . Defendants do not "concede the applicability of substantive aspects of California law to this case." (Opp., p. 10, note.) Although they contend that New York law may be applicable under relevant choice of law rules, they concede that on this motion "the Court need not reach the choice of law issue because the essential element of lack of probable cause is also an essential element of the tort of malicious prosecution under New York law.”
 
 (Id.)
 
 In New York, as in California, a defendant in a malicious prosecution action may be said to have acted with probable cause in bringing the underlying action "only if a reasonable man in the same position would believe, and defendant did in fact believe, that he had sufficient information to justify initiating” the action.
 
 Boose v. City of Rochester,
 
 71 A.D.2d 59, 421 N.Y.S.2d 740, 748 (1979). In New York, therefore, “the good faith belief of a malicious prosecution defendant is of paramount importance on the question of probable cause.”
 
 Neulist v. Nassau County,
 
 108 Misc.2d 160, 437 N.Y.S.2d 239, 245
 
 *376
 
 (1981). Because New York and California both require subjective belief in the merits of the underlying action as well as an objective, reasonable belief in order to find that the defendant acted with probable cause, the analysis under California law is equally applicable in an action governed by New York law.
 

 [5]
 

 . Plaintiffs appear to rely primarily on the subjective belief test to establish lack of probable cause. Unlike the detailed allegations of paragraph 7 regarding lack of subjective belief, the First Amended Complaint contains no specific allegations to support the general "without probable cause” allegation (¶ 5) with respect to the objective portion of the test. I note also that Judge Lasker's mootness ruling on the § 13(d) claim was based on a second amendment to Scope’s Schedule 13D, filed
 
 after
 
 the underlying action was commenced. 499 F.Supp. at 1124. In affirming the trial court, the Second Circuit agreed that a “genuine and vigorous dispute" existed "over the issue of Scope’s status as an unregistered investment company.” (Unpublished Memo., No. 80-4048, Apr. 24, 1981.)
 

 [6]
 

 . Other, cases relied on by defendants have adopted
 
 Sweeney's
 
 reasoning.
 
 E.g., Martin-Trigona v. Brooks & Holtzman,
 
 551 F.Supp. 1378 (S.D.N.Y.1982);
 
 New York v. Citibank, N.A.,
 
 537 F.Supp. 1192 (S.D.N.Y.1982).
 

 [7]
 

 . A classic example was presented in
 
 Adkins v. Lear, Inc.,
 
 67 Cal.2d 882, 890 & n. 5, 64 Cal.Rptr. 545, 435 P.2d 321 (1967) (defense of patent invalidity asserted to state court breach of contract [patent licensing agreement] claim),
 
 vacated and remanded,
 
 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). One explicit reason for the remand was because "Lear must be required to address its arguments attacking the validity of the underlying patent to the California courts in the first instance.” 395 U.S. at 676, 89 S.Ct. at 1914.
 
 See also Lear Siegler, Inc. v. Adkins,
 
 330 F.2d 595 (9th Cir. 1964).
 

 [8]
 

 . Although
 
 Sweeney
 
 concedes that such assertion of federal jurisdiction “may not be appropriate” in every malicious prosecution case founded on an underlying federal claim, 449 F.Supp. at 216, there appears to be no principled basis for drawing any distinctions.