Richard G. NILL, Plaintiff,

v.

ESSEX GROUP, INC., Defendant.

No. 1:93–CV–307.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 10, 1994.

**1314**

Edward L. Murphy, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for plaintiff.

Steven L. Jackson, Michael J. Nader, Baker and Daniels, Fort Wayne, IN, for defendant.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's Motion to Remand Case to State Court filed on December 7, 1993. For the following reasons the motion is GRANTED.

### FACTUAL BACKGROUND

On October 27, 1993, plaintiff, Richard G. Nill (hereinafter: "Nill"), filed a malicious prosecution Complaint against defendant, Essex Group, Inc. (hereinafter: "Essex"), in the Allen Superior Court, in Allen County, Indiana. Nill's malicious prosecution Complaint arises out of various state court lawsuits and appeals therefrom concerning Essex's administration of an ERISA pension plan from which Nill was entitled to benefits. The events leading up to the Complaint filed in the Allen Superior Court are as follows.

Nill was the original founder and part owner of a company known as Fort Wayne Tool & Die, Inc. (hereinafter: "Fort Wayne Tool"). In 1961, a trust agreement was executed on behalf of Fort Wayne Tool naming Indiana Bank & Trust Company of Fort Wayne (hereinafter: "Bank") as trustee. The purpose of the trust was to provide a pension plan for all full-time salaried employees of Fort Wayne Tool, including Nill. The trust agreement provided that the pension benefits would come from two funds. Fort Wayne Tool would contribute to a General Fund and an Auxiliary Fund for each participating employee.

In 1969, the stock of Fort Wayne Tool was sold to Essex. As part of the terms of sale, Essex agreed to act as the pension plan sponsor of the 1961 trust agreement and to enter into an employment agreement with Nill whereby Nill would remain employed as the President and Chief Executive Officer of Fort Wayne Tool after the sale.

After the sale, Nill and Essex had a falling out which lead to the early retirement of Nill in 1976. Instead of receiving an annuity as called for in the trust agreement, Nill requested the Bank to make a lump-sum distribution to him of his accumulated retirement benefits. The Bank made a lump sum payment of $117,536.35 to Nill, which was the amount of funds the Bank deemed necessary to purchase a retirement annuity at that time for Nill. There remained $55,244.44 in Nill's Auxiliary Fund. Nill requested the remaining funds, but Essex objected to any further disbursements.

The Bank instituted a declaratory judgment action on or about October 31, 1977, naming Nill and Essex as defendants and requested the court to make a determination whether any further disbursements should be made to Nill.

Nill claimed entitlement to the monies in his auxiliary fund under two separate theories. First, that the drafter of the trust agreement had omitted a provision, due to a scrivener's error, which would have authorized the lump-sum payment to Nill. Second, as the plan was written, Employee Retirement Income Security Act (ERISA) provisions applied and mandated disbursement of the auxiliary funds to Nill.

The trial court found that Nill was entitled to the auxiliary funds under the second argument. However, the Indiana Court of Appeals ultimately held that ERISA did not mandate any distribution to Nill. *Essex Group, Inc. v. Nill,* 462 N.E.2d 1334 (Ind. App.1984). The Court of Appeals held that the plan was not a "hybrid" plan, and therefore, Nill was not entitled to the monies in the auxiliary fund in excess of the amount necessary to purchase a retirement annuity. The Court of Appeals remanded the case back to the trial court with orders to make a determination with respect to Nill's first theory of recovery, i.e., reformation of the trust agreement to correct a scrivener's error.

The trial court granted Nill's Motion for Summary Judgment as to this theory of recovery on February 5, 1988. The trial court reformed the trust agreement to allow for a lump-sum payment to Nill from the auxiliary fund. Essex appealed this decision of the trial court. The Court of Appeals held that the reformation question was one of state law and was not preempted by ERISA because the omission that formed the basis of the reformation occurred before the preemptive date of ERISA. *Essex Group, Inc. v. Nill,* 543 N.E.2d 393 (Ind.App.1989). The Court of Appeals further held that reformation was appropriate under the circumstances. *Id.* at 397.

Subsequently, Essex instituted a cause of action against Nill and others. The Complaint alleged breach of warranty and indemnification provisions of the 1969 contract of sale of Fort Wayne Tool to Essex alleging Nill failed to disclose to Essex the mistake in the trust agreement that lead to its reformation. Essex sought recovery of its attorneys fees and its costs incurred in challenging the lump-sum payment to Nill in the previous action. After remand, on April 16, 1993, the Steuben Circuit Court held Essex was not entitled to indemnification since Essex had no protectable interest in challenging the lump-sum payment to Nill, and therefore, was never "at risk." Accordingly, the court held that any attorneys fees incurred by Essex in that litigation were unreasonable as a matter of law.

## ARGUMENTS

As noted *supra,* Nill filed his malicious prosecution Complaint against Essex in the Allen Superior Court on October 27, 1993. Nill contends that Essex's actions during the dispute over the lump-sum payment from the pension plan amounted to tortious and malicious acts. Nill also seeks punitive damages.

Nill argues that Essex improperly removed his state action to federal court and that this court lacks subject-matter jurisdiction over the Complaint. Nill maintains that the malicious prosecution Complaint does not require any further determinations as to the applicability of ERISA to the trust agreement and that any dispute as to the trust agreement has already been fully disposed of in the state court proceedings. Thus, Nill continues, neither the preemptive provisions of ERISA, which dictate that federal law preempts any state law that may conflict or encroach upon ERISA, nor the complete preemption doctrine apply to the state cause of action of malicious prosecution.

Therefore, Nill concludes, there is no federal question for this court to consider and removal to the federal district court was improper because this court lacks subject-matter jurisdiction over the allegations comprising the Complaint. Furthermore, Nill asserts that removal by Essex was so blatantly improper that the court should order Essex to pay Nill's just costs and actual expenses including attorney fees he has in-

curred in seeking a remand of this case to state court.

Essex removed the cause of action to this court on November 23, 1993. In Essex's Amended Brief in Response to Plaintiff's Motion to Remand, Essex asserts that removal was proper under a fair reading of Nill's Complaint where the Complaint did not ever use the phrase "malicious prosecution." Essex argues that a fair reading of the Complaint allows one to conclude that the provisions of ERISA would necessarily have to be interpreted in order to defend the lawsuit, and thus, the complete preemption doctrine and the court's federal question jurisdiction would be invoked. Essex maintains that the Complaint alleges improper administration of an ERISA pension plan by Essex, and thus, ERISA's preemptive provisions and the complete preemptive doctrine would allow for removal.

Essex removed the state cause of action to this court pursuant to 28 U.S.C. § 1441.[1] Essex relies upon the provisions found in 29 U.S.C. § 1132(a)(2) & (e)(1), 29 U.S.C. § 1109 and 29 U.S.C. § 1144(a) to confer exclusive jurisdiction upon this court of Nill's state cause of action. The crux of Essex's argument is that although Nill has brought his claim for damages in the form of a state malicious prosecution claim, Nill is actually pursuing an ERISA claim for breach of fidu-

ciary duty. Essex relies upon the complete preemption doctrine and ERISA's preemption statute, 29 U.S.C. § 1144,[2] for the proposition that federal law has preempted Nill's state malicious prosecution claim as that state claim relates to a claim for breach of fiduciary duty under section 1109 of ERISA, and therefore, can be recharacterized as a federal claim under ERISA.

29 U.S.C. § 1109 is the ERISA section that makes fiduciaries who administer pension plans liable to the pension plan for any breaches of fiduciary duty.[3] An action for breach of fiduciary duty is cognizable under the civil enforcement section of ERISA found at 29 U.S.C. § 1132. Subsection (a)(2) recognizes the right of the Secretary, a participant, beneficiary or fiduciary to seek appropriate relief under section 1109.[4] Subsection (e)(1) makes explicit that such an action under sections 1109 and 1132(a)(2) are within the *exclusive* jurisdiction of the United States district courts.[5]

## DISCUSSION

### Well Pleaded Complaint Rule

■ A Complaint alleging malicious prosecution states a cause of action under the common law of Indiana. *See, Willsey v. Peoples Sav. & Loan,* 529 N.E.2d 1199 (Ind.App.

---

1. 28 U.S.C. § 1441 is the removal statute and provides in pertinent part:

   Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

2. 29 U.S.C. § 1144(a) states:

   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now of hereafter relate to any employee benefit plan described in section 1003(a) of this title. This section shall take effect on January 1, 1975.

3. 29 U.S.C. § 1109 states in pertinent part:
   (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to

the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

4. 29 U.S.C. § 1132(a)(2) states:

   (a) A civil action may be brought—
   (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title;

5. 29 U.S.C. § 1132(e)(1) provides:

   Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

1988). There are four elements to a malicious prosecution charge under Indiana law:

1. The defendant instituted or caused to be instituted an action against the plaintiff;

2. the defendant acted maliciously in so doing;

3. the defendant had no probable cause to institute the action;

4. the original action was terminated in the plaintiff's favor.

*Id.* at 1205. Furthermore, the gist of an action for malicious prosecution is that the plaintiff has been improperly made the subject of legal process to his damage. *Jenner v. Carson,* 111 Ind. 522, 13 N.E. 44 (1887).

■■■ The court is not convinced that a state claim of malicious prosecution presents a federal question that would confer subject-matter jurisdiction upon the court.[6] Only state court actions that originally could have been filed in federal court may be removed by the defendant to federal court. 28 U.S.C. § 1441. "The presence of absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The rule makes the plaintiff master of his or her own claim; he or she may avoid federal jurisdiction by exclusive reliance on state law. *Id.* Furthermore, a defendant may not remove a state cause of action to federal court based on the defense of federal preemption. That is, a state cause of action "may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. at 2430.

■■■ Federal district courts have already determined that malicious prosecution causes of actions do not give rise to any federal question that would confer subject-matter jurisdiction upon the federal district court. *See, Miloslavsky v. Audio Engineering Society,* 770 F.Supp. 224 (S.D.N.Y.1991). The courts have held that no substantial federal question arises under the laws of the United States even where a state court may be asked to interpret federal law when analyzing the probable cause element common to all state malicious prosecution claims. *See, e.g., Scope Industries v. Skadden,* 576 F.Supp. 373 (C.D.Cal.1983) (The court held that no federal question was present where a state court would have to interpret provisions of the Securities Exchange Act of 1934 to determine whether the defendant had no probable cause to institute the underlying action for securities violations);[7] *City of Fresno v. Frampton,* 560 F.Supp. 31 (1983) (holding that there was no federal question where a state court would have to interpret 42 U.S.C. § 1981, 1983, 1985 and 1986, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution in order to determine whether the defendant had no probable cause to institute the underlying cause of action for civil rights violations).

Thus, under ordinary subject-matter jurisdiction analysis, Essex has failed to demonstrate that it has correctly removed the state cause of action to this court. While the Allen Superior Court may be called upon to analyze the probable cause element of the malicious prosecution claim as it relates to the underlying ERISA action, the court does not find that such interpretation amounts to a substantial question of federal law that would

---

6. 28 U.S.C. § 1331 is the statute that grants district courts jurisdiction over federal questions and states:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7. "The question of whether or not a colorable claim existed under the Exchange Act at the commencement of the underlying action is different in kind than the question of whether or not

Scope violated the Exchange Act, as alleged in the underlying action ... To the extent that a state court would be called upon to interpret the Exchange Act and the decisions of federal courts interpreting that Act, I cannot say that such interpretation would raise a "substantial question" of federal law. Indeed, I cannot say that such interpretation would involve "resolution" of a federal question at all." *Scope Industries,* 576 F.Supp. at 379.

confer subject-matter jurisdiction upon this court. Furthermore, although Essex may desire to raise some defense related to its handling of its previous ERISA litigation with Nill, the possible federal defense does not overcome the well pleaded complaint rule.

### ERISA Preemption and The Complete Preemption Doctrine

■ The court now turns to the more difficult issue of whether Nill's Complaint may be correctly recharacterized as a claim for breach of fiduciary duty under 29 U.S.C. § 1109, and therefore, fall under the complete preemption doctrine and ERISA's preemption statute, and thus, be removed to this court. Essex relies upon 29 U.S.C. § 1109, ERISA's preemption statute found at 29 U.S.C. § 1144, the complete preemption doctrine, and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), as authority.

ERISA mandates that it preempts any state laws that relate to any employee benefit plan. 29 U.S.C. § 1144, *supra.* Furthermore, the Supreme Court of the United States has held that there is an independent corollary to the well pleaded complaint rule. The corollary is the complete preemption doctrine. The Court has held that the "preemptive force of a statute may be so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987), *quoting, Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Furthermore, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983).

In *Metropolitan Life,* a former salaried employee of General Motors Corporation brought suit in state court alleging state causes of action seeking benefits under the company's ERISA benefit plan. The employee sought compensatory damages for money contractually owed, compensation for mental anguish caused by breach of contract and reimplementation of all benefits and insurance coverage. The employee also alleged claims of wrongful termination of employment and wrongful failure to promote. General Motors removed the case to federal district court and the employee motioned for a remand to state court asserting removal was improper as he had alleged only state causes of action.

The Supreme Court of the United States held that removal was proper. *Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547. The Court concluded that the state claims could be recharacterized as federal claims under ERISA where the employee was seeking to recover benefits under the ERISA benefit plan. The Court ruled that the ERISA preemption statute by itself did not convert the state claims into federal claims, but because the employee was seeking benefits under the plan, his claims fell directly under a civil enforcement provision of ERISA, 29 U.S.C. § 1132(a)(1)(B) and were therefore preempted by the complete preemption doctrine. *Id.* at 64–67, 107 S.Ct. at 1546–48. The court looked to Congressional intent to ascertain whether such state claims were "related to an employee benefit plan" and whether the complete preemption doctrine applied. *Id.* at 62–63, 107 S.Ct. at 1545–46.

The Court turned to the jurisdictional subsection of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(f), to see whether ERISA's civil enforcement provision at issue, 29 U.S.C. § 1132(a)(1)(B) should be given extraordinary preemptive power. The Court found that subsection 1132(f) closely paralleled the jurisdictional subsection of the Labor Management Relations Act, 29 U.S.C. § 185(a), which Act had already been interpreted by the Court as completely preempting state law in the labor relations field.[8]

---

**8.** 29 U.S.C. § 1132(f), the jurisdictional subsec-    tion of ERISA states:

The Court then turned to the legislative history in order to confirm that the jurisdictional subsection of ERISA did in fact imply that the civil enforcement provisions should completely preempt state law. The Court found:

> [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.*

*Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547, *quoting,* H.R.Conf.Rep. No. 93–1280, p. 327 (1974) (emphasis provided). Thus, the court concluded that the state claims seeking benefits under the benefit plan were completely preempted by federal law, were to be treated as federal questions, and therefore, were properly removed to federal court.

Essex asserts that the reasoning of *Metropolitan Life* is applicable to the present case. Essex contends that Nill's state claim of malicious prosecution may be recharacterized as authorized under the civil enforcement section of ERISA. 29 U.S.C. § 1132(a)(2). Essex argues that the state action may be recharacterized as an action based on breach of fiduciary duty pursuant to 29 U.S.C. § 1109, and is therefore completely preempted by ERISA, and thus, removable to federal court. Essex points out that the Court ruled that Congress manifested its intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) of ERISA removable to federal court. *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547. However, Essex fails to appreciate that the Court in *Metropolitan Life* answered the narrow question that when an employee seeks benefits under an ERISA plan under state law contract claims, the defendant may remove the action because it is completely preempted by 29 U.S.C. § 1132(a)(1)(B). *Metropolitan Life,* 481 U.S. at 60, 107 S.Ct. at 1544. The Court did not answer the question presented here, that is, whether a state tort action alleging malicious prosecution may be recharacterized as a federal question of breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2).

However, the court need not rely upon this narrow distinction in determining that Nill's malicious prosecution claim is not preempted by ERISA and the complete preemption doctrine. The court holds that the state claim of malicious prosecution does not fall within the scope of ERISA's civil enforcement provisions. That is, the malicious prosecution claim cannot be recharacterized as a federal claim asserting breach of fiduciary duty under ERISA. Unlike the employee in *Metropolitan Life,* Nill is not asserting state contract claims that directly seek to enforce provisions of an ERISA benefit plan.[9] The issues relating to Nill's ERISA claim have already been determined by the Indiana State courts.

Instead, Nill is asserting a new claim against Essex, which claim does not seek to recover any benefits due him under the plan, or to enforce his rights under the terms of the plan, or to clarify his future rights under the plan, or to assert mismanagement on the part of Essex as the fiduciary administering the plan. As stated *supra,* the gist of Nill's malicious prosecution claim is that *he has been improperly made the subject of legal process to his damage.* Thus, Nill's challenge is to Essex's conduct with regard to the legal process concerning the underlying claim of the previous action. Nill's state cause of action may be thought of as one step removed from any ERISA federal question.

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

9. Essex has failed to provide this court any authority directly on point, and this court has failed to find any as well. The cases cited by Essex as authority that a malicious prosecution claim may be recharacterized as a federal claim falling under ERISA's civil enforcement provisions all deal with state contract actions where the plaintiff is directly seeking benefits under the benefit plan. Thus, the court finds the facts of Essex's supporting cases distinguishable from the case at bar.

Stated another way, Nill's malicious prosecution claim does not "relate to" the ERISA benefit plan pursuant to ERISA's preemption section, 29 U.S.C. § 1144, as the phrase has been interpreted by the courts. The phrase has been interpreted broadly to include state laws that are specifically designed to affect employee benefit plans, state laws that encompass reporting, disclosure and fiduciary obligations, and state laws that "relate to" employee benefit plans in a much broader sense whenever they have connection with or reference to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). However, in *Shaw*, the Court also stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2902 n. 21. This standard does not provide lower courts with a black letter rule to follow, and consequently, lower courts have relied upon various factors in determining whether a state law of general applicability has been preempted by ERISA. The factors relied upon do not comprise an exhaustive list and no single factor is controlling. *Van Camp v. AT & T Information Systems*, 963 F.2d 119, 123 (6th Cir. 1992).

One of the factors to be considered is whether the claim arises under a law that represents a traditional exercise of state authority. *Id.* Another factor is whether invocation of the state law will affect relations among the principal ERISA entities. *Id.* The court may also consider whether the state law negates an ERISA plan provision, *Baxter v. Lynn*, 886 F.2d 182, 185 (8th Cir. 1989), whether the state law impacts the structure of ERISA plans, *United Food & Commercial Workers v. Pacyga*, 801 F.2d 1157, 1160 (9th Cir.1986), whether the state law impacts the administration of ERISA plans, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9–10, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987), whether the state law has an economic impact on ERISA plans, *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 147–48 (2nd Cir.1989), and whether preemption of the state law is consistent with other ERISA provisions. *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 832–40, 108 S.Ct. 2182, 2186–91, 100 L.Ed.2d 836 (1988).

After careful review of the above factors and their applicability to the facts of the present case, the court concludes that Nill's malicious prosecution claim does not relate to any ERISA claim, and therefore, is not preempted by ERISA. First, the court does not see how the malicious prosecution claim, which has the element of probable cause as the only element possibly related to the alleged ERISA claim, can possibly be construed as affecting relations among the principal ERISA entities, negating an ERISA plan provision, impacting the structure of ERISA plans, or impacting economically on ERISA plans. All of these factors really concern themselves with a more direct encroachment by a state law into the field occupied by ERISA. Second, the claim arises under a law that represents a traditional exercise of state authority. The tort of malicious prosecution is traditionally a creature of state and not federal law. Finally, while the state law may possibly impact the administration of ERISA plans, the court finds this one connection to tenuous to meet the requirements of a finding of preemption. Such an interpretation is too strained in light of the purpose of the malicious prosecution claim. The purpose of the claim is to make the plaintiff whole where he has been *improperly made the subject of legal process to his damage. Jenner v. Carson*, 111 Ind. 522, 13 N.E. 44 (1887). The purpose of the state claim is not to relitigate an ERISA claim.

Thus, the court holds that the state malicious prosecution claim filed by Nill in state court may not be recharacterized as a federal claim under ERISA for breach of fiduciary duty where the state claim does not relate to an ERISA benefit plan. The court further holds that while some state claims may fall under the civil enforcement provisions of ERISA and therefore be completely preempted, Indiana's common-law cause of action of malicious prosecution is not a state claim that falls under the civil enforcement provisions of ERISA because the state claim does not relate to an ERISA benefit plan. Therefore, this court lacks subject-matter

jurisdiction over the claim and the cause of action is to be remanded to State court.

## AWARD OF COSTS

 Nill's Motion to Remand seeks an award of costs and attorney fees, pursuant to 28 U.S.C. § 1447, in the event the court rules the action must be remanded back to state court. 28 U.S.C. § 1447(c) provides in pertinent part:

> An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

An award of costs is within the trial court's discretion and is usually appropriate only when the nonremovability of the action is obvious. *Olsen v. Olsen*, 580 F.Supp. 1569, 1572 (N.D.Ind.1984). Essex removed the state claim on the basis that the claim constituted an action falling under the civil enforcement provisions of ERISA, and was therefore completely preempted by ERISA. Furthermore, Nill never states in his Complaint that the action is one for "malicious prosecution." Thus, the court does not find that the issue of nonremovability was obvious. The court does not find the attempted removal herein was such to warrant an award of costs.

## CONCLUSION

For all of the foregoing reasons, the plaintiff's Motion to Remand Case to State Court filed on December 7, 1993, is GRANTED. The case is hereby remanded back to the Allen Superior Court, Allen County, Indiana.